UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:18-cv-81061-BLOOM

FUNDING METRICS, LLC

    Plaintiff,

vs.

DECISION ONE DEBT RELIEF, LLC;
D1 SERVICING GROUP, LLC;
VERITAS LEGAL PLAN, INC.;
ANGELO ANZALONE; SARA ANZALONE;
CHRIS CARROLL; VICTOR CASTALDO;
MARIO CHAVOYO; RAYMOND CIERVO
MATTHEW FRANK; JESSE ROSS;
REY RUIZ; JOHN SANDOVAL;
STEVEN SCORSONE; DWAYNE SMITH;
and JOHN ZINICOLA,

    Defendants.
_____/

## DEFENDANTS, VERITAS LEGAL PLAN, INC., ANGELO ANZALONE, SARA ANZALONE, VICTOR CASTALDO, AND DWAYNE SMITH'S, MOTION TO DISMISS COUNTS I, II, IV, V, AND VI OF PLAINTIFF'S COMPLAINT

Defendants, Veritas Legal Plan, Inc. ("Veritas"), Angelo Anzalone ("A. Anzalone"), Sara Anzalone ("S. Anzalone"), Victor Castaldo ("Castaldo"), and Dwayne Smith ("Smith") (collectively, the "Veritas Defendants") by and through undersigned counsel, hereby move this Court to dismiss Counts I, II, IV, V, VI of the Complaint[1] [D.E. 1] filed by Plaintiff, Funding Metrics, LLC ("Plaintiff"), and, in support state as follows:

---

[1] Count III of the Complaint is directed towards the "Decision One Defendants" (as defined in the Complaint). On September 20, 2018, counsel for Plaintiff confirmed, via email, that Smith was inadvertently included in the definition of "Decision One Defendants" group. Accordingly, no response is required from Smith or any of the Veritas Defendants to Count III of the Complaint.

*Funding Metrics, LLC v. Decision One Debt Relief, LLC et al.*                                    Case No.: 1:18-cv-81061-BLOOM
Page 2

## I. INTRODUCTION

On August 10, 2018, Plaintiff filed a six count Complaint. Five of the counts are directed against one or more of the Veritas Defendants (as well as other defendants), and purport to allege: a claim under the Racketeer Influenced and Corrupt Organization Act ("RICO," 18 U.S.C. §§ 1961-1968) (Count I); a claim under the Florida RICO (Racketeer Influenced and Corrupt Organization) Act, Section 895.03(3), *Florida Statutes,* (Count II); a claim for conspiracy to tortiously interfere with contractual relationships (Count IV); a claim for conversion (Count V); and a claim for fraudulent transfer (Count VI). For the reasons discussed below, Counts I, II, IV, V, and VI against the Veritas Defendants should be dismissed.

## II. SUMMARY OF THE COMPLAINT

Plaintiff is in the business of purchasing the accounts receivable of merchants—commonly referred to as merchant cash advance funding. *Compl.* at ¶ 2. Defendant Decision One Debt Relief, LLC ("Decision One") is a debt relief company that, among other things, allegedly renegotiates and restructures merchants' agreements with Plaintiff and other funding companies. *Id.* According to Plaintiff's Complaint, Defendant D1 Servicing Group, LLC ("D1 Servicing") is an alter ego of Decision One and offers the same services of Decision One. *Id.* at ¶ 48. Veritas is a prepaid legal services provider. *Id.* at ¶ 4.

The crux of Plaintiff's Complaint is that Decision One fraudulently presents itself as debt relief company able to renegotiate and restructure merchant agreement between merchants and Plaintiff and other funding companies. *Id.* at ¶ 2. Plaintiff alleges that Decision One identifies merchants under contract with Plaintiff through mailers, cold calls, and online advertising, and that, through misleading and/or false representations, promises that, with Decision One's help, merchants will save money on those contracts by defaulting on them. *Id* at ¶¶ 2 and 35. Plaintiff

further alleges that Decision One offers merchants access to a prepaid legal plan, through Veritas, in the event funding companies such as Plaintiff initiate litigation against the merchant. *Id.* at *¶2.* There are no allegations anywhere in the Complaint that any of the Veritas Defendants had any involvement in identifying or procuring any merchants.

Plaintiff further alleges that Decision One, through its employees, interfered with Plaintiff's contractual relationships by advising certain merchants to close their bank accounts, change their business name, and stop making payments to Plaintiff in order for Decision One to renegotiate their debt with Plaintiff. *Id.* ¶ 36 – 40. There are no allegations in the Complaint that any of the Veritas Defendants knew of, or otherwise assisted in providing any such advice to merchants.

### III.     LEGAL STANDARD

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of a plaintiff's claim for relief. *See Ventrassit Ply. Ltd. v. Heartware, Inc.*, 377 F.Supp. 2d 1278, 1285 (S.D.Fla. 2005). The court must determine whether, assuming all facts alleged in a complaint are true, a cause of action exists. *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1303 (11th Cir. 2008). Although when considering a motion to dismiss, the court must construe the complaint in the light most favorable to the plaintiff, a plaintiff's obligation to provide the grounds for an entitlement to relief requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Furthermore, the plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." *Id*. Stated differently, a complaint must contain enough facts to indicate the presence of the required elements. *See State Farm Mut. Auto. Ins. Co. v. Performance Orthopaedics & Neurosurgery, LLC*, 278 F. Supp. 3d 1307, 1315 (S.D. Fla. 2017) (*citing Watts v. Fla. Int'l Univ.*,

495 F.3d 1289, 1302 (11th Cir. 2007)). Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged. *See, e.g.*, *UMG Recordings, Inc. v. Shelter Cap. Partners LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013).

## IV. ARGUMENT

### A. Plaintiff Does Not and Cannot State A Plausible Claim For Violation Of §18 U.S.C. 1962(c) (Count I) Against the Veritas Defendants.

To state a claim under section 1962(c), a plaintiff must allege: "(1) the existence of an enterprise; (2) that the enterprise affected interstate commerce; (3) that the defendants were employed by or associated with the enterprise; (4) that the defendants participated . . . in the conduct of the affairs of the enterprise; and (5) that the defendants participated through a pattern of racketeering activity." *U.S. v. Starrett*, 55 F.3d 1525, 1541 (11th Cir. 1995). A plaintiff who seeks to allege a RICO claim must specifically identify, and factually plead, each element of a viable RICO claim.

Here, Plaintiff brings its claim under Section 1962(c), which provides that: "it shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." As more fully set forth below, Plaintiff's 1962(c) claim is fatally flawed and must be dismissed with prejudice.

### 1. Plaintiff Has Not—And Cannot—Plead The Existence Of A Valid "Association-In-Fact" Enterprise.

A RICO enterprise under Section 1962(c) can be either a "single person or entity" or an "association-in-fact" enterprise, which is "any union or group of individuals associated in fact although not a legal entity," and further defined by the Supreme Court as a "group of person

associated together for a common purpose or engaged in a court of conduct." *United States v. Turkette*, 452 U.S. 576, 583 (1981). The Eleventh Circuit has held that in civil cases this "group of persons associated together" may **not** include "non-living entities," such as corporate entities. *Lockheed Martin Corp. v. Boeing Co,* 357 F. Supp. 2d 1350, 365 (M.D. Fla. 2005) (finding that the plaintiff's "claims of legitimate associations-in-fact fail for the additional reason that they are alleged to include corporations and government agencies") (citing *U.S. v. Hartley,* 678 F.2d 961, 989 (11th Cir. 1982) *overruled in part on other grounds by U.S. v. Goldin Industries, Inc.,* 219 F.3d 1268 (11th Cir. 2008)). Since the Eleventh Circuit's decision in *Hartley,* a panel of the Eleventh Circuit ruled, contrary to *Hartley*, that an association-in-fact enterprise may include corporations and other non-living entities. *U.S. v. Navarro-Ordas,* 770 F.2d 959 (11th Cir. 1985). However, *Hartley* remains dispositive under the Eleventh Circuit's prior precedent rule, which provides that, when an intra-circuit conflict exists, "the earliest panel opinion resolving the issue in question binds the circuit until the court resolves the issue *en banc."* *U.S. v. Dailey,* 24 F.3d 1323, 1327 (11th Cir. 1994). In overruling *Hartley* on other grounds, the *Goldin* court did not address the issue of whether associations-in-fact may be comprised of corporations or other non-living entities and therefore, that aspect of the *Hartley* decision remains controlling. *Goldin,* 219 F.3d at 1271.

In the present case, Plaintiff alleges that the 1962(c) enterprise is an association-in-fact enterprise made up of "Decision One and its chief executive officer, John Sandoval, Veritas and its founder, Angelo Anzalone (the "Decision One Enterprise"). *Compl.* at ¶ 67. Decision One and Veritas however, are "non-living entities" and, as a matter of law, cannot be part of an association-in-fact enterprise. As such, Plaintiff has failed to plead the existence of a valid "association-in-fact" and its Section 1962(c) claim should be dismissed with prejudice.

**2. The Complaint Fails to Allege a RICO "Enterprise" Separate and Apart From RICO Defendants Themselves, or Separate and Apart from the Purported Underlying Racketeering Activity.**

The Complaint fails to allege an "enterprise," because it does not allege any association (a) distinct from the Defendants themselves, or (b) distinct from the alleged underlying racketeering activity. It is well-settled that a RICO complaint must allege an "enterprise" that is distinct from the "persons" allegedly committing the underlying racketeering acts. *See, e.g.*, *U.S. v. Goldin Indus.*, 219 F.3d 1268, 1270-71 (11th Cir. 2000). This holding reflects "Congress' intention in § 1962(c) to target a specific variety of criminal activity, 'the exploitation and appropriation of legitimate businesses by corrupt individuals.'" *Goldin*, 219 F.3d at 1270 (quoting *Yellow Bus Lines, Inc. v. Drivers, Chauffeurs & Helpers Local Union 639*, 883 F.2d 132, 139 (D.C. Cir. 1989)). A failure to distinguish the enterprise from the individual defendants mandates dismissal of RICO claims. *Florida Evergreen Foliage v. E.I. Dupont De Nemours and Co.*, 336 F. Supp. 2d 1239, 1260-61 (S.D. Fla. 2004). Moreover, an "enterprise," being a distinct functioning entity, must exist separate from the alleged underlying racketeering activity. *Millette v. DEK Technologies, Inc.*, No. 08-60639-CV, 2008 WL 5054741, at *4-5 (S.D. Fla. Nov. 25, 2008) (dismissing RICO claims where alleged enterprise comprised one scheme directed at limited number of victims, because RICO enterprise is something more than group conspiring to commit fraud); *Von Grabe v. Sprint PCS*, 312 F. Supp. 2d 1285, 1309 (S.D. Cal. 2003) (RICO enterprise must exist independently from racketeering activity in which enterprise engages, and because only ongoing "enterprise" and not ad hoc association is actionable, plaintiff must allege facts substantiating distinct function wholly unrelated to racketeering activity).

In the instant case, Plaintiff's RICO claims fail because the "enterprise", as alleged in the Complaint, has no existence separate and apart from Decision One's own alleged affairs (*i.e.*

procuring clients for its debt relief business). *See Goldin Indus., Inc.*, 219 F.3d at 1270-71; *Ageloff*, 318 F. Supp. 2d at 1159. "[M]erely alleging that the 'Defendants conspired with each other and with others ...' does not allege an enterprise either." *Palm Beach Cty. Envtl. Coal. v. Florida*, 651 F. Supp. 2d 1328, 1349 (S.D. Fla. 2009). If the purported "enterprise" is just a name for the acts alleged, as here, then it is not a RICO enterprise. *See Jenkins v. Deutsche Bank Nat'l Trust Co.*, No. 07-22463, 2009 U.S. Dist. LEXIS 129921, at *21-23 (S.D. Fla. Sept. 3, 2009) (dismissing RICO claim in part because "Plaintiff does not allege the existence of an enterprise, beyond the conclusory assertion that various Defendants ... form an association-in-fact"); s*ee also Jenkins v. Deutsche Bank Nat'l Trust Co.*, No. 07-22463, 2009 U.S. Dist. LEXIS 129921, at *21-23 (S.D. Fla. Sept. 3, 2009) (dismissing RICO claim in part because "Plaintiff does not allege the existence of an enterprise, beyond the conclusory assertion that various Defendants ... form an association-in-fact").

The Complaint fails to allege an "enterprise" distinct from the alleged "racketeering activity." Specifically, Plaintiff has alleged that the Decision One Enterprise functions by "***emailing, mailing and/or calling*** merchants to persuade them to sign up and/or keep of (sic) the appearance that they will eventually receive service." *Compl.* at ¶ 68 (emphasis added). Plaintiff then alleges that same racketeering activity as a basis for its RICO claim. Specifically, Plaintiff alleges that the racketeering activity consists of "***mail and wire fraud, including Decision One's calls, emails, and mailed correspondence***" with Plaintiff's merchants. *Compl.* at ¶ 68 (emphasis added).

In sum, because the Complaint pleads a loose association-in-fact with a single goal and/or an identity indistinguishable from the alleged racketeering activity, it lacks an actionable "enterprise." Accordingly, the RICO claims should be dismissed.

*Funding Metrics, LLC v. Decision One Debt Relief, LLC et al.*                Case No.: 1:18-cv-81061-BLOOM
Page 8

### 3. Plaintiff Fails To Plead That The Veritas Defendants Participated In the Conduct Of The Enterprise.

An "enterprise" is defined as including "any individual, partnership, corporation association or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). To plead a RICO claim under Section 1962(c), the plaintiff must allege some agreement between the members of the enterprise to commit the predicate acts. *U.S. v. Valera*, 845 F.2d 923, 929-30 (11th Cir. 1988). Association with the enterprise, without more, is insufficient for violation of RICO. *Id.* Instead, "an individual must *agree* to participate in the affairs of the enterprise." *Id.* (emphasis in original). "Agreement on an overall objective can be proved by either [(1)] an explicit agreement to participate in the enterprise or [(2)] circumstantial evidence showing that each defendant must necessarily have known that others were also conspiring to participate in the same enterprise through a pattern of racketeering activity." *Id.*

Plaintiff Complaint sets forth no factual allegation supporting either: (1) an explicit agreement among the four members of the association-in-fact enterprise or (2) a finding that the Veritas Defendants knew that the other alleged members were conspiring to participate in the alleged enterprise through a pattern of racketeering activity. Notably, the Complaint is also devoid of any allegation of any fraudulent or illegal communication between the Veritas Defendants and the merchants with whom Plaintiff allegedly contracted.[2]  It is undisputed that the Veritas Defendants do not (i) identify the merchants under contract with Plaintiff, (ii) communicate with

---

[2] The only communications alleged to occur between the merchants and the Veritas Defendants are as follows: (1) Veritas sent Lasting Income for Elderly ("LIFE") a welcome email on June 2, 2017 after LIFE retained Veritas, *see Compl.* at ¶ 53, (2) Castaldo emailed LIFE on January 30, 2018 with contact information for the attorney who would be handling its dispute, *see Compl.* at ¶ 54, and (3) Smith sent Junior G.E.T. Enrichment Center ("Junior") a welcome email on December 1, 2017 after Junior retained Veritas, *see Compl.* at ¶ 60.

the merchants prior to being engaged by Decision One, (iii) send mailers or flyers to merchants, or (iv) advise the merchants on how to handle their respective contracts with Plaintiff. Rather, the allegations in the Complaint regarding those activities are directed only to **Decision One**. *See Compl.* at ¶¶ 34, 35, 39, and 40. There is no allegation that any of the Veritas Defendants agreed to participate in the affairs of the enterprise.

All of Plaintiff's allegations center around **Decision One's** activities as a "Debt Relief" Company—not Veritas's activities as a prepaid legal services provider. *See Compl.* at ¶¶ 34-49. In fact, Plaintiff's alleged RICO claim centers entirely on how it "lost over a million dollars in collections from merchants induced by **Decision One**'s deceptive promises to repudiate their obligations to Plaintiff." *Compl.* at ¶ 72 (**emphasis added**). There is no allegation that the Veritas Defendants knew that the other alleged members of the Decision One Enterprise were conspiring to participate in the alleged enterprise through a pattern of racketeering activity, nor is there any allegation of an agreement to participate in the affairs of the alleged enterprise.

Moreover, a defendant must have not only "participate[d] in the operation or management of the enterprise itself," but must also have "*some part* in directing the enterprise's affairs." *Reves v. Ernst & Young*, 507 U.S. 170, 179, 183 (1993). Liability "depends on showing that the defendants conducted or participated in the conduct of the '*enterprise's* affairs,' not just their *own* affairs." *Id*. at 185(quoting § 1962(c)). Here, Plaintiff alleges in conclusory fashion that "each of the Defendants participate in the operation and management of the Decision One Enterprise by emailing, mailing, and/or calling merchants to persuade them to sign up and/or to keep of the appearance that they will eventually receive service." *Compl.* at ¶ 68. This allegation is inconsistent with the rest of the Complaint, which describes how **Decision One** allegedly persuaded merchants to sign up for the Decision One's debt relief plan through mailers, calls,

advertising, and emails. *See Compl.* at ¶ 50. In fact, there is not a single allegation as to any of the Veritas Defendants having had some part in directing the alleged enterprise's affairs. For example, the only mention of S. Anzalone vis-à-vis Plaintiff's RICO claim is that she was the Chief Operating Officer of Veritas. *Compl.* at ¶ 13. A. Anzalone is mentioned in the context of his knowledge regarding the debt relief and prepaid legal service plan industries. *See Compl.* at ¶¶ 4,12, and 46. Lastly, the only mention of Castaldo and Smith is that they sent a welcome email and contact information for an attorney to a merchant. *See Compl.* at ¶¶ 54, 60. These allegations describe the Veritas Defendants' actions in conducting Veritas's *own affairs*, not those of a sperate enterprise. Veritas, a provider of prepaid legal services, does not become subject to a RICO claim by conducting its own affairs. *See Super Vision Int'l, Inc. v. Mega Int'l Commercial Bank Co.*, 534 F. Supp. 2d 1326, 1338 (S.D. Fla. 2008) ("bankers do not become racketeers by acting like bankers") (quotations omitted). Even taking the allegations in the Complaint as true, no reasonable inference can be made that the Veritas Defendants ***directed*** the enterprise's affairs, and not just their own affairs.

Plaintiff has failed to plead that the Veritas Defendants participated and/or directed the conduct of the alleged enterprise, and, as such, Plaintiff's RICO claim in Count I should be dismissed as to the Veritas Defendants.

### 4. Plaintiff Fails To Allege A Pattern Of Racketeering Activity By The Veritas Defendants.

In its Complaint, Plaintiff fails to allege that any of the Veritas Defendants have engaged in a "pattern" of "racketeering activity." To successfully plead a pattern of racketeering activity, Plaintiff must allege that: (1) the defendants committed two or more predicate acts within a ten-year time span; (2) the predicate acts were related to one another; and (3) the predicate acts demonstrated criminal conduct of a continuing nature. *H.J., Inc. v. Northwest Bell Tel. Co.*, 492

U.S. 229, 239 (1989). The phrase "racketeering activity" is defined as including any act that is indictable under a lengthy list of federal criminal offenses, including the federal statutes prohibiting mail and wire fraud under 18 U.S.C. §§ 1341, 1343[3]. *See Special Purpose v. Prime One Capital Co.*, 202 F. Supp. 2d 1339 (S.D. Fla. 2002) (striking mail and wire fraud RICO claims). Plaintiff has not plead the elements required for even *one* mail fraud/wire fraud predicate RICO act against the Veritas Defendant—let alone the required two.

In *Braunstein,* 2002 U.S. Dist. LEXIS 24853, the Court addressed the required elements that a RICO plaintiff must "plead and prove" for civil RICO predicated on mail fraud or wire fraud:

> A plaintiff who asserts a RICO claim predicated on mail or wire fraud must allege and prove: (1) that the defendant intentionally participated, (2) in a scheme to defraud, (3) the plaintiff of money or property, (4) by means of material misrepresentation, (5) using the mails or wires, (6) that the plaintiff relied on a misrepresentation made in furtherance of the fraudulent scheme, (7) that the misrepresentation would have been relied upon by a reasonable person, (8) that the plaintiff suffered injury as a result of such reliance, and (9) that the plaintiff incurred a specifiable amount of damages.

(*citing Sikes v. Teleline, Inc.,* 281 F.3d 1350, 1360-61 (11th Cir. 2002).

Here, Plaintiff has not alleged, nor can it allege, that the Veritas Defendants participated in any mail or wire fraud. The only allegation that even references any "mail" sent by the Veritas Defendants involves a "welcome email." *See Compl.* at *¶¶* 53-54. Nowhere in the Complaint has Plaintiff alleged that the "welcome email" was a misrepresentation, that the merchant (or Plaintiff) relied upon it, or that Plaintiff or merchant suffered an injury based on the merchant's reliance on the welcome email. Again, Plaintiff's alleged mail or wire fraud allegations all center on ***Decision One's*** alleged conduct. Specifically, Plaintiff alleges that: "the interstate calls, emails, and mailed

---

[3] Plaintiff fails to cite to any statute for the alleged "mail and wire fraud."

correspondence between *Decision One* and those merchants form a pattern of wire and mail fraud that has continued for over a year and show no signs of abating." *Compl.* at ¶ 50 (emphasis added).

Because Plaintiff has not alleged a pattern of racketing activity by the Veritas Defendants, Plaintiff's RICO claim in Count I should be dismissed as to the Veritas Defendants.

### 5. Plaintiff Has Not Alleged Injury Proximately Caused By a Pattern of Racketeering Activity.

Even if Plaintiff could allege an injury to its business or property, it also must allege that the claimed pattern of racketeering activity proximately caused an injury. *See Simpson v. Sanderson Farms, Inc.*, 744 F.3d 702, 708 (11th Cir. 2014). In this context, "proximate cause … requires 'some direct relation between the injury asserted and the injurious conduct alleged.'" *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 9 (2010) (quoting *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992)). To have standing to assert a claim under Section 1962(c), the plaintiff's injury must have a direct relationship to the conduct prohibited by that section—*i.e.*, the pattern of racketeering activity. *See Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 457 (2006) (reasoning that the "proper interpretation of § 1964(c) required consideration of the statutory history, which revealed that 'Congress modeled § 1964(c) on the civil-action provision of the federal antitrust laws, § 4 of the Clayton Act.'…[and] a 'plaintiff's right to sue under § 4 requires a showing that the defendant's violation not only was a 'but for' cause of his injury, but was the proximate cause as well.'"); *see also Holmes v. Sec. Investor Prot. Corp.,* 503 U.S. 258, 268 (1992) ("[A] plaintiff who complain[s] of harm flowing merely from the misfortunes visited upon a third person by the defendant's acts [is] generally said to stand at too remote a distance to recover.").

Here, Plaintiff lacks standing to bring a RICO claim against the Veritas Defendants, as it has not alleged an injury to any tangible interest by reason of any act by any of the Veritas

Defendants. Instead, Plaintiff alleges that its "merchants owe Plaintiff over $1,000,000, which Plaintiff wither will never collect, or will collect only in part and after delay and added collection expenses caused by *Decision One*." *Compl.* at ¶ 62 (emphasis added). This conclusory prediction that, but for Decision One's—**_not the Veritas Defendants'_**—alleged conduct, Plaintiff *would have* collected over $1,000,000 from its merchants, alleges only an "injury to the mere expectancy interests or to an intangible property interest" which is insufficient to confer RICO standing. *See Regions Bank v. J.R. Oil Co., LLC*, 387 F.3d 721, 730 (8th Cir. 2004).

Moreover, as discussed in Section IV.A.3 above, Plaintiff has not alleged any injury that directly flowed from any conduct of the Veritas Defendants via mail or wire fraud. Plaintiff's failure to plead proximate cause independently deprives it of RICO standing. Accordingly, Plaintiff's RICO claim in Count I must be dismissed.

### 6. The Alleged Mail and Wire Frauds Do Not Satisfy Rule 9(b)

Plaintiff's stated basis for its claim that the Veritas Defendants committed a predicate RICO act is Plaintiff's allegation that "each of the Defendants participate in the operation and management of the Decision One Enterprise by emailing, mailing, and/or calling merchants to persuade them to sign up and/or to keep of the appearance that they will eventually receive service." *Compl.* at ¶ 68. But this conclusory reference to "emailing, mailing, and/or calling merchants" is wholly insufficient to meet Rule 9(b)'s pleadings requirements, which requires Plaintiff to allege with respect to its substantive RICO allegations: "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiff; and (4) what the defendants gained by the alleged fraud." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283,

1291 (11th Cir. 2010). "The plaintiff must allege facts with respect to **_each_** defendant's participation in the fraud." *Id.* (emphasis added)

Plaintiff does not state what misrepresentations *any* of the Veritas Defendants made, how any alleged statement made by *any* of the Veritas Defendants (e.g. a welcome email) mislead Plaintiff or its alleged merchants, and what the Veritas Defendants gained by the (nonexistent) statements they allegedly made. As described, *supra*, the only mention of any statement made by any of the Veritas Defendants is a welcome email and an email providing contact information for an attorney from Smith and Castaldo. *See Compl.* at ¶¶ 53,54, 60. There is not a single allegation that A. Anzalone or S. Anzalone made any statements—let alone a false one—to Plaintiff's merchants, because there are none. Even worse, Plaintiff does not provide a "precise statement," "document," or "misrepresentation made" in the alleged welcome email, nor does Plaintiff allege how an alleged welcome email mislead Plaintiff's alleged merchants or what Smith or Castaldo gained by such an email. Accordingly, Count I must be dismissed.

### B. **Plaintiff Does Not and Cannot State A Plausible Claim For Violation of Fla. Stat. § 895.03(3) (Count II) Against the Veritas Defendants.**

In Count II of the Complaint, Plaintiff alleges that the Veritas Defendants violated Section 895.03(3), *Florida Statutes*. That section, however, is Florida's *criminal* racketeering statute, under which no private right of action is available. Accordingly, for that reason alone Count II of Complaint should be dismissed.

Assuming for purposes of this Motion, however, that Plaintiff intended to assert a claim under Florida's *civil* racketeering statute (Fla. Stat. 772.103 *et. seq.*), that claim still fails for the reasons set forth in sections III.A.1-6, *supra*. *See Jackson v. Bell South Telecommunications*, 372 F.3d 1250, 1263 (11th Cir. 2004)("[I]nterpretation of Florida's RICO law is informed by case law interpreting the federal RICO statute ... on which Chapter 772 is patterned. Because Florida courts

often look to the Federal RICO decisions for guidance in interpreting and applying the act[,] the analysis we apply to the plaintiff'' federal RICO claims is equally applicable to their state RICO claims.") (internal quotation marks and citations omitted)*; see also All Care Nursing Serv., Inc. v. High Tech Staffing Servs., Inc*., 135 F.3d 740, 745 (11th Cir. 1998).

### C. Plaintiff Does Not and Cannot State A Plausible Claim For Conspiracy For Tortious Interference with Contract (Count IV) Against the Veritas Defendants.

Under Florida law, a cause of action for civil conspiracy requires: (1) an agreement between two or more parties; (2) to perform an unlawful act; (3) the doing of some overt act in pursuance of the conspiracy, and (4) damage to plaintiff as a result of the acts done under the conspiracy. *Bray & Gillespie Mgmt. LLC v. Lexington Ins. Co.*, 527 F. Supp. 2d 1355, 1370 (M.D. Fla. 2007)(*citing Fla. Fern. Growers Ass'n, Inc. v. Concerned Citizens of Putnam County*, 616 So.2d 562, 565 (Fla. 2d DCA 1993). "General allegations of conspiracy are inadequate." *World Class Yachts, Inc. v. Murphy,* 731 So.2d 798, 799 (Fla. 4th DCA 1999). A complaint must "set forth clear, positive, and specific allegations of civil conspiracy." *Id.* Moreover, "an actionable conspiracy requires an actionable underlying tort or wrong." *Bray & Gillespie Mgmt. LLC*, 527 F. Supp. 2d at 1370. Here, the underlying claim tort is tortious interference with contract. The elements of tortious interference of a contract are (1) the existence of a contract to which a plaintiff is a party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional procurement of the contractual breach; (4) the absence of justification or privilege; and (5) the plaintiff suffered damages from the breach. *See Fernandez v. Haber & Ganguzza, LLP*, 30 So. 3d 644 (Fla. 3d DCA 2010).

In Count IV of the Complaint, Plaintiff alleges in conclusory fashion that "Defendants agreed to combine for the common purpose of interfering with Plaintiff's contracts with merchants." *Compl.* at ¶ 89. However, Plaintiff never even attempts to explain what "**overt ac**t"[4] was allegedly committed by any of the Veritas Defendants. An "overt act" by definition is an ***active*** step in furtherance of the conspiracy. While there is no requirement that each co-conspirator commit acts in furtherance of the conspiracy, each conspirator **must *know* of the scheme and *assist*** in some way. *MP, LLC v. Sterling Holding, LLC*, 231 So. 3d 517, 522 (Fla. 3d DCA 2017), *reh'g denied* (Dec. 5, 2017), *review denied sub nom. TD Bank, N.A. v. MP, LLC*, SC18-34, 2018 WL 1673416 (Fla. Apr. 6, 2018) (emphasis added).

Here, Plaintiff only alleges a ***passive*** act by the Veritas Defendants. Specifically, Plaintiff alleges that "Veritas, Angelo Anzalone, Sara Anzalone, Castaldo and Smith furthered and facilitated the Decision One Defendants' tortious interference with Plaintiff's contracts with the merchants by ***permitting*** the Decision One Defendants to represent to merchants that Veritas would provide them with insurance against legal expenses, and by providing such putative insurance." *Compl.* at ¶ 92 (emphasis added). Plaintiff fails to allege that each (or any) of the Veritas Defendants *knew* of the alleged scheme or that (or how) each (or any) of the Veritas Defendants *assisted* in the alleged scheme. Nowhere in the Complaint does Plaintiff allege any type of active or overt act in furtherance of an alleged conspiracy to tortiously interfere with the alleged contracts between Plaintiff and the merchants. Accordingly, Count IV for conspiracy for tortious interference with contract must be dismissed as to the Veritas Defendants.

---

[4] An "overt act" in criminal law is an action which might be innocent itself but if part of the preparation and ***active*** furtherance of a crime, can be introduced as evidence of a defendant's participation in a crime. *See* https://dictionary.law.com/Default.aspx?selected=1426

### D. **Plaintiff Does Not and Cannot State A Plausible Claim For Conversion (Count V) Against Veritas.**

To state a claim for conversion, a plaintiff must allege (1) defendant's unauthorized act (2) deprives plaintiff of his or her property permanently or for an indefinite time, and (3) the deprivation is inconsistent with plaintiff's ownership interest in the property. *See DePrince v. Starboard Cruise Srvcs., Inc.*, 163 So. 3d 586, 597 (Fla. 3d DCA 2015). Furthermore, for money to be the proper subject of conversion there must be an obligation to keep intact or deliver the specific money in question, so that such money can be identified. *See Belford Trucking Co. v. Zagar*, 243 So. 2d 646, 648 (Fla. 4th DCA 1970); *see also Florida Dept. of Ins. v. Debenture Guar.*, 921 F.Supp. 750, 757 (M.D. Fla. 1996); *Industrial Park Devel. Corp. v. Am. Exp. Bank, FSB.*, 960 F.Supp.2d 1363, 1366 (S.D. Fla. 2013). Money is only capable of identification where it is delivered at one time, by one act and in one mass, or where the deposit is special and the identical money is to be kept for the party making the deposit, or where wrongful possession of such property is obtained. *Belford Trucking Co.*, 243 So. 2d at 648. In *Walker v. Figarola*, 59 So. 3d 188, 190 (Fla. 3d DCA 2011), the Court stated:

> The law in Florida is clear—a simple monetary debt generally cannot form the basis of a claim for conversion or civil theft. *See Gasparini v. Pordomingo*, 972 So. 2d 1053, 1055 (Fla. 3d DCA 2008) ("It is well-established law in Florida that a simple debt which can be discharged by the payment of money cannot generally form the basis of a claim for conversion or civil theft.").

Here, the Complaint alleges nothing more than a monetary debt owed to it by its merchants. Plaintiff fails to allege that the money is identifiable or in any other way gives rise to a claim for anything more than a contract claim against its merchants for allegedly closing their bank accounts. *See Belford Trucking Co.,* 243 So. 2d at 648 (Fla. 4th DCA 1970)("[A]n action in tort is inappropriate where the basis of the suit is a contract, either express or implied."); s*ee also Compl.*

at *¶* 97 ("The Merchant defaults on their agreement with Plaintiff by failing to pay Plaintiff when able and/or by cutting off Plaintiff's access to the Merchants bank accounts, as Defendants (sic) counsel merchants to (sic) do."). Based upon the foregoing, Plaintiff's conversion claim must be dismissed as to the Veritas Defendants.

### E. Plaintiff Does Not and Cannot State a Plausible Claim For Fraudulent Transfer (Count VI) Against Veritas.

"Every conveyance made without fair consideration when the person making it is a defendant in an action for money damages or a judgment in such an action has been docketed against him, is fraudulent as to the plaintiff in that action without regard to the actual intent of the defendant if, after final judgment for the plaintiff, the defendant fails to satisfy the judgment." N.Y. Debt. & Cred. Law § 273-a. Section 273–a contains no language which requires that the transferee be a named defendant in the antecedent action for money damages that triggered the fraudulent conveyance. *Sklaroff v. Rosenberg*, 125 F. Supp. 2d 67, 74 (S.D.N.Y. 2000), aff'd, 18 Fed. Appx. 28 (2d Cir. 2001). Liability is imposed on "parties who participate in the fraudulent transfer of a debtor's property and are transferees of the assets and beneficiaries of the conveyance." *Constitution Realty, LLC v. Oltarsh*, 766 N.Y.S.2d 425, 427 (2003)*; see also Stochastic Decisions, Inc. v. DiDomenico,* 995 F.2d 1158, 1172 (2d Cir. 1993)("The New York Court of Appeals has made it clear that the pertinent provisions of the New York Debtor and Creditor Law provide a creditor's remedy for money damages against parties who participate in the fraudulent transfer of a debtor's property and are transferees of the assets and beneficiaries of the conveyance.)

Here, Plaintiff alleges in conclusory fashion that its merchant, Your House, transferred funds to Veritas after a judgment was entered against Your House. *See Compl.* at *¶* 108. However, Plaintiff's claim against Veritas is belied by its own contradictory, yet specific, allegation in the same Complaint wherein Plaintiff alleges that **Decision One**—not Veritas—was the transferee and

beneficiary of the transfer, and that Decision One orchestrated the alleged transfer. Specifically, Plaintiff alleges:

> [O]n November 15, 2017, in a call with Raymond Ciervo of Decision One, Plocki heard the usual sales pitch: Decision One would save him a lot of money if he started paying it, changed his bank accounts to cut off Plaintiff, and did not communicate with Plaintiff, and Decision One would go to work for Your House right away. Persuaded, Plocki signed up, exchanging a series of emails with Ciervo on November 22, 2017. Over the following months Your House paid Decision One approximately $10,000 while not paying Plaintiff. However, Decision One never accomplished anything for Your House, which went into bankruptcy. Your House was out-of-pocket $10,000, with no benefit, while Plaintiff suffered loss of business; loss of income; delays in collection; increased collections costs; and attorney fees.

*Compl.* at ¶ 61.

Plaintiff's fraudulent transfer claim against Veritas fails because it does not allege that Veritas (i) *participated* in the fraudulent transfer (ii) was the *transferee* of the assets, and (iii) was the *beneficiary* of the conveyance. Accordingly, Count VI must be dismissed as to Veritas.

### V.     CONCLUSION

WHEREFORE, Veritas Legal Plan, Inc., Angelo Anzalone, Sara Anzalone, Victor Castaldo, and Dwayne Smith respectfully request that the Court enter an Order dismissing Counts I, II, IV, V, and VI of the Complaint, with prejudice, and for such further relief deemed just and proper.

Dated: October 15, 2018.

Respectfully submitted,

**MARKO & MAGOLNICK, P.A.**
*Attorneys for Veritas Defendants*
3001 S.W. 3rd Avenue
Miami, Florida 33129
Telephone: (305) 285-2000
Facsimile: (305) 285-5555

By: /s/ Omar Ali-Shamaa
    **Joel S. Magolnick**
    Florida Bar No. 776068
    Magolnick@mm-pa.com
    **Omar Ali-Shamaa**
    Florida Bar No. 121461
    Omar@mm-pa.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 15, 2018, a true and correct copy of the foregoing document was filed electronically with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record either via transmission of Notices of Electronic Filing generated by CM/ECF, or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

    /s/Omar Ali-Shamaa
    Omar Ali-Shamaa