**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.: 18-81061-CIV-Bloom/Reinhart**

FUNDING METRICS, LLC,

        Plaintiff,

    vs.

DECISION ONE DEBT RELIEF LLC, D1
SERVICINNGROUP LLC, VERITAS LEGAL
PLAN, INC., ANGELO ANZALONE, SARA
ANZALONE, MARIO CHAVOYO, MATTHEW
FRANK, JESSE ROSS, JOHN SANDOVAL,
STEVEN SCORSONE, and DWAYNE SMITH,

        Defendants.

_____/

**ORDER ON MOTIONS TO DISMISS COMPLAINT [DE 31, 33]**

Before the Court for decision are (1) the Motion to Dismiss filed by Defendants Decision One Debt Relief, LLC ("Decision One"), John Sandoval, Jesse Ross, Mario Chavoyo, and Matthew Frank (collectively "the Decision One Defendants"), DE 33, and (2) the Motion to Dismiss filed by Defendants Veritas Legal Plan, Inc. ("Veritas"), Angelo Anzalone, Sara Anzalone, Victor Castaldo, and Dwayne Smith (collectively "the Veritas Defendants"). DE 31. The presiding District Judge referred these motions to the undersigned. DE 47. The parties subsequently consented, pursuant to 28 U.S.C. § 636(c), to have the undersigned enter a final Order, rather than a Report and Recommendation. DE 59.

The Court has reviewed the Motions, the Plaintiff's Responses, and the Defendants' Replies. The Court also conducted oral argument on January 16, 2019. This matter is ripe for decision.

For the reasons stated below, it is ORDERED that the Veritas Defendants' Motion to

Dismiss is GRANTED WITHOUT PREJUDICE. It is further ORDERED that the Decision One Defendants' Motion is DENIED in PART and GRANTED in PART WITHOUT PREJUDICE. Plaintiff is granted leave to amend the Complaint on or before March 8, 2019.

## LEGAL STANDARDS

On August 10, 2018, Plaintiff filed a six-count Complaint alleging the following:

|  | Claim | Defendants |
|---|---|---|
| Count 1 | Federal RICO | All Defendants |
| Count 2 | State RICO | All Defendants |
| Count 3 | Tortious Interference with Contract | Decision One Defendants |
| Count 4 | Conspiracy to Tortuously Interfere With Contract | All Defendants |
| Count 5 | Conversion | Decision One Debt Relief, LLC D1 Servicing Group, LLC Veritas Legal Plan, Inc. |
| Count 6 | Fraudulent Conveyance | Decision One Debt Relief, LLC D1 Servicing Group, LLC Veritas Legal Plan, Inc. |

The Decision One Defendants and the Vertitas Defendants have moved to dismiss the claims against them. [1]

### 1. <u>Motion to Dismiss Standard</u>

A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To satisfy the Rule 8 pleading requirements, a claim must provide the defendant fair notice of plaintiff's claim and the grounds upon which it rests. *See Swierkiewicz v. Sorema N. A*., 534 U. S. 506, 512 (2002). While a claim

---

[1] In addition to the Decision One Defendants and the Veritas Defendants, Plaintiff sued D1 Servicing Group, LLC, Chris Carroll, Raymond Ciervo, Rey Ruiz, Steven Scorsone, and John Zinicola. D1 Servicing Group, LLC, was served with the complaint on August 20, 2018. DE 35. It did not file a responsive pleading, so a default was entered against it. DE 67. Scorsone was served on September 4, 2018. DE 36. A default also was entered against him. DE 67. Carroll, Ciervo, Ruiz, and Zinicola were not served and have been dismissed from the case. DE 65.

"does not need detailed factual allegations," it must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U. S. 662, 678 (2009) (explaining that the Rule 8(a)(2) pleading standard "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation"). Nor can a claim rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U. S. at 678 (quoting *Twombly*, 550 U. S. at 557 (alteration in original)).

On a motion to dismiss under Rule 12(b)(6), the Court must view the well-pled factual allegations in the Complaint in the light most favorable to the non-moving party. *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016). Viewed in that manner, the factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact). *Twombly*, 550 U. S. at 555 (citations omitted). The Supreme Court has emphasized that "[t]o survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly,* 550 U. S. at 570). In addition, "courts may infer from factual allegations in the complaint obvious alternative explanations, which suggest lawful conduct rather than the unlawful conduct that plaintiff would ask the court to infer." *Am. Dental Assoc. v. Cigna Corp*., 605 F. 3d 1283, 1290 (11th Cir. 2010)(citing *Iqbal,* 556 U. S. at 682). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal,* 556 U. S. at 678 (quoting *Twombly,* 550 U. S. at 557). When evaluating a motion to dismiss under Rule 12(b)(6):

> [A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-

> pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal,* 556 U. S. at 679. Factually unsupported allegations based "on information and belief" are not entitled to the assumption of truth. *See Scott v. Experian Info. Sols., Inc.,* 2018 WL 3360754, at *6 (S.D. Fla. June 29, 2018) (J. Altonaga) ("Conclusory allegations made upon information and belief are not entitled to a presumption of truth, and allegations stated upon information and belief that do not contain any factual support fail to meet the *Twombly* standard.").

### 2. Heightened Pleading Standard for Fraud under Rule 9(b)

In addition to the usual notice pleading standard under Rule 8, allegations of fraud require a plaintiff to state "with particularity the circumstances constituting the fraud." *Mizzaro v. Home Depot, Inc.,* 544 F.3d 1230, 1237 (11th Cir. 2008). The Eleventh Circuit has interpreted this requirement to mean that the complaint must set forth (1) precisely what statements or omissions were made in which documents or oral representations; (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) them; (3) the content of such statements and the manner in which they misled the plaintiff; and (4) what the defendant obtained as a consequence of the fraud. *FindWhat Investor Group v. FindWhat.com,* 658 F.3d 1282, 1296 (11th Cir. 2011) (noting that while Rule 9(b) requires the circumstances of the fraud to be pled with particularity, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally"). Here, because Funding Metrics' theory of RICO and tortious interference with contract is based on the defendants allegedly defrauding the merchants, Rule 9(b) applies to Counts 1-4. *See American Bancard, LLC v. East Payment Solutions, Inc.,* No. 18-80681-CIV, 2018 WL 3708462 at *4 (S.D. Fla. Aug. 3, 2018) (J. Bloom)(Rule 9(b) applies to RICO claim based on fraud); *Medimport S.R.L. v. Cabreja,* 929 F. Supp. 2d 1302, 1320 (S.D. Fla. 2013)(J. Otazo-Reyes)(Rule 9(b) applies to tortious interference claim).

**3. RICO**

Count One of the Complaint alleges a violation of 18 U.S.C. § 1962(c) as incorporated by

18 U.S.C. § 1964(c). Section 1962(c) states in pertinent part:

> It shall be unlawful for any person employed by or associated with any enterprise
> engaged in, or the activities of which affect, interstate or foreign commerce, to
> conduct or participate, directly or indirectly, in the conduct of such enterprise's
> affairs through a pattern of racketeering activity or collection of unlawful debt.

Count Two alleges a violation of Florida Statutes § 895.03(3), which provides in pertinent part:

> It is unlawful for any person employed by, or associated with, any enterprise to
> conduct or participate, directly or indirectly, in such enterprise through a pattern of
> racketeering activity or the collection of an unlawful debt.

The sole textual difference between these statutes is that the federal law requires a nexus to

interstate or foreign commerce. At oral argument, the parties agreed that the claims under the

Florida RICO statute are to be evaluated using the same standards as the federal RICO claims.

The elements of a civil RICO claim under § 1962(c) are (1) the existence of an enterprise,

(2) that the enterprise affected interstate commerce, (3) that the defendants were employed by or

associated with the enterprise, (4) that the defendants participated in the conduct of the affairs of

the enterprise (5) that the affairs of the enterprise were conducted through a pattern of racketeering

activity, (6) that the plaintiff suffered damages, and (7) that the defendant was both the but-for and

proximate cause of the damages. *See Sedima, S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. 479, 496

(1985); *Holmes v. Securities Investor Protection Corp.,* 503 U.S. 258, 268 (1992); *Ray v. Spirit

Airlines,* 836 F.3d 1340, 1348 (11th Cir. 2016). A defendant must have "knowingly committed, or

aided and abetted in committing, at least two acts of racketeering activity." 11th Circuit Pattern

Jury Instruction (Criminal) O75.1. "Knowingly" means "that an act was done voluntarily and

intentionally and not because of a mistake or by accident." 11th Cir. Pattern Jury Instruction

(Criminal) B9.1A. To "aid and abet" a person must intentionally associate with, or participate in,

a crime as a willful participant. Merely being present or knowing about the crime is insufficient. 11th Cir. Pattern Jury Instruction (Criminal) S7. To act "willfully" means "that the act was committed voluntarily and purposely, with the intent to do something the law forbids; that is, with the bad purpose to disobey or disregard the law." 11th Cir. Pattern Jury Instruction (Criminal) B9.1A.

To "participate in the conduct of" the enterprise, a defendant must have some role in managing or operating the enterprise. *Reves v. Ernst & Young,* 507 U.S. 170, 179 (1993)("RICO liability is not limited to those with primary responsibility for the enterprise's affairs [nor is it] limited to those with a formal position in the enterprise, but *some* part in directing the enterprise's affairs is required.")(emphasis in original). "When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries." *Anza v. Ideal Steel Supply Corp,* 547 U.S. 451, 461 (2006), *quoted in Ray,* 836 F.3d at 1349; *Bivens Gardens Office Bldg., Inc. v. Barnett Banks of Fla., Inc.*, 140 F.3d 898, 908 (11th Cir. 1998)("[T]he test for RICO standing is whether the alleged injury was directly caused by the RICO violation, not whether such harm was reasonably foreseeable.").

The essence of a Section 1962(c) violation is the commission of a pattern of criminal acts through an enterprise. The person committing the offense (the defendant) must be distinct from the vehicle through which the offense is committed (the enterprise). *Cedric Kushner Promotions, Ltd., v. King,* 533 U.S. 158, 161-62 (2001). The defendant and the enterprise cannot be isomorphic; that is, they cannot be "the same 'person' referred to by a different name." *Id.* at 161. Where an enterprise is alleged to consist only of a corporation and its employees acting in their official capacity, the corporation cannot be a defendant because it is not distinct from the enterprise. *Ray,* 836 F.3d at 1357 ("We, too, hold that plaintiffs may not plead the existence of a RICO enterprise

between a corporate defendant and its agents or employees acting within the scope of their roles for the corporation because a corporation necessarily acts through its agents and employees.").

The Complaint alleges that the predicate racketeering acts are mail and wire fraud.[2] The federal mail and wire fraud statutes share the following elements: (1) knowingly devising or participating in a scheme to defraud or to obtain money or property by false or fraudulent pretenses, representations, or promises, (2) the falsity related to a material fact, and (3) specific intent to defraud. 11th Cir. Pattern Jury Instructions (Criminal) O50.1 (mail fraud), O51 (wire fraud). "To act with 'intent to defraud' means to act knowingly and with the specific intent to deceive or cheat someone, usually for personal financial gain or to cause financial loss to someone else." 11th Cir. Pattern Jury Instructions (Criminal) O50.1. Mail fraud also requires that the mails or a private interstate carrier was used to help carry out the scheme. *Id.* Instead of a use of the mails, wire fraud requires the use of an interstate wire communication to help carry out the scheme. 11th Cir. Pattern Jury Instructions (Criminal) O51. The relevant communication need not itself be false or fraudulent. *Schmuck v. United States*, 489 U.S. 705, 715 (1989).

### 4. Tortious Interference with Contract

Under Florida law, "[a] claim for tortious interference with a contractual or business relationship consists of four elements: 1) the existence of a business relationship between the plaintiff and a third person, not necessarily evidenced by an enforceable contract, under which the plaintiff has legal rights, 2) the defendant's knowledge of the relationship, 3) an intentional and unjustified interference with the relationship by the defendant which induces or otherwise causes the third person not to perform, and 4) damage to the plaintiff resulting from the third person's

_____

[2] Although the Complaint does not cite to the federal mail and wire fraud statutes, the Court assumes that Funding Metrics is relying on 18 U.S.C. §§ 1341 and 1343, which are specifically listed as predicate racketeering acts in 18 U.S.C. § 1961(1).

failure to perform." *DNA Sports Performance Lab, Inc. v. Club Atlantis Condo. Ass'n, Inc*, 219 So. 3d 107, 110 (Fla. 3d. Ct. App. 2017). The defendant must act with specific intent to interfere. *Chicago Title Ins. Co. v. Alday-Donalson Title Co. of Fla.*, 832 So. 2d 810, 814 (Fla. 2d Ct. App. 2002); Florida Pattern Civil Jury Instruction 408.6 ("Interference is intentional if the person . . . desires to interfere or knows that interference is substantially certain to occur as a result of his action."). Interference becomes unjustified if it arises from improper motive or improper methods. "In order to succeed on a tortious interference claim under Florida law using an improper motive theory, the plaintiff must prove that the defendant's motive was purely malicious." *KMS Rest. Corp. v. Wendy's Int'l, Inc.*, 361 F.3d 1321, 1326–27 (11th Cir. 2004). Alternatively, "even where the defendant's motive is not purely malicious, a tortious interference claim may succeed if improper methods were used." *Id.* at 1327. Improper methods may include physical violence, misrepresentations, and illegal conduct. *See* Florida Pattern Civil Jury Instruction 408.6.

**5.  Civil Conspiracy**

"To plead civil conspiracy, a plaintiff must allege "(a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy." *Cordell Consultant, Inc. Money Purchase Plan & Trust v. Abbott,* 561 Fed. Appx. 882, 886 (11th Cir. 2014) (quoting *Raimi v. Furlong,* 702 So.2d 1273, 1284 (Fla. 3d Ct. App. 1997); *Alhassid v. Bank of Am., N.A.*, 60 F. Supp. 3d 1302, 1316 (S.D. Fla. 2014) (J. Bloom). There is no independent cause of action for civil conspiracy; there must be an underlying illegal act or tort. *Id.*

6. **Conversion**

Under Florida law, conversion constitutes the exercise of wrongful dominion and control over the property to the detriment of the rights of the actual owner. *Ice v. Cosmopolitan Residences on South Beach, a Condominium Association, Inc.*, 237 So.3d 408, 411 (Fla. 3d Ct. App. 2017); *Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1258 (11th Cir. 2015)("Under Florida law, '[a] conversion consists of an act in derogation of the plaintiff's possessory rights, and any wrongful exercise or assumption of authority over another's goods, depriving him of the possession, permanently or for an indefinite time, is a conversion.'")(citations omitted). A conversion claim is based on a positive, overt act or acts of dominion or authority over money or property inconsistent with and adverse to the rights of the true owner. *Black Business Inv. Fund of Cent. Florida, Inc. v. State, Dept. of Economic Opportunity*, 178 So.3d 931, 936 (Fla. 1st Ct. App. 2015). In order to recover for conversion, a plaintiff generally must prove by a preponderance of the evidence that there was: (1) an act of dominion wrongly asserted, (2) over another's property, and (3) inconsistent with his ownership therein. *Warshall v. Price,* 629 So.2d 903, 904 (Fla 4th Ct. App. 1993). To state a claim for the conversion of money, there must exist a specific fund capable of separate identification. *Bel-Bel Intern. Corp. v. Community Bank of Homestead*, 162 F.3d 1101, 1108 (11th Cir. 1998). The specific fund requirement acts as an exception to the general rule that an obligation to pay money cannot be enforced through an action for conversion. *Id.*

7. **Fraudulent Conveyance**

Count Six alleges a fraudulent conveyance in violation of New York Debtor and Creditor Law § 273-a, which states:

> Every conveyance made without fair consideration when the person making it is a defendant in an action for money damages or a judgment in such an action has been

docketed against him, is fraudulent as to the plaintiff in that action without regard to the actual intent of the defendant if, after final judgment for the plaintiff, the defendant fails to satisfy the judgment.

"'Fair consideration' is defined under Debtor and Creditor Law § 272 as property exchanged 'as a fair equivalent' for other property." *Marine Midland Bank-New York v. Batson*, 70 Misc. 2d 8, 10, 332 N.Y.S.2d 714, 717 (Sup. Ct. 1972).

## FACTS[3]

Funding Metrics provides "cash advance funding" to merchants. Under this arrangement, Funding Metrics provides a fixed, up-front capital infusion in return for a percentage share of the merchant's future accounts receivable. This arrangement is memorialized in a Merchant Cash Advance Agreement. ¶¶ 27-28. The Merchant Cash Advance Agreement authorizes Funding Metrics to automatically debit funds from the merchant's bank account. ¶ 29. The amount presumptively debited is a specified percentage of the receivables. *Id.* The merchants also give Funding Metrics a security interest in all of their assets, which Funding Metrics perfects by filing a UCC-1 financing statement. ¶ 30. Should the merchant default on the Merchant Cash Advance Agreement, the full amount owed to Funding Metrics becomes due immediately. ¶ 31.

Decision One offers "debt-relief" services to merchants. It markets that it can help merchants restructure their debts (including the Merchant Cash Advance Agreements) in return for fees paid to Decision One. ¶ 34. The merchant agrees to pay Decision One a percentage of the merchant's debt, as well as $1500 for Veritas prepaid legal insurance. ¶ 42. A document titled "Veritas Legal Plan Services Plan," which bears the Decision One logo, is included as part of the Debt Resolution Agreement between Decision One and the merchant. ¶ 47. Decision One initially

---

[3] Paragraph citations ("¶") are to the numbered paragraphs in the Complaint.

contacts, and later communicates with, merchants through the U.S. mail, by email, and by telephone. ¶¶ 35-37.

Decision One falsely promises reduced payment obligations, better debt terms, and better cash flow. ¶ 38. Decision One advises merchants to stop making payments under the Merchant Cash Advance Agreements, and further advises them to open new bank accounts that cannot be automatically debited by Funding Metrics. ¶ 39. Decision One minimizes (or outright dismisses) the legal risks involved in following its advice. *Id.* Decision One further tells the merchants that it will begin negotiating with Funding Metrics as soon as the merchant makes its first payment to Decision One. ¶ 42.

As more fully discussed below, Decision One entered into debt reduction agreements with the following merchants who had Merchant Cash Advance Agreements with Funding Metrics, and all of whom defaulted on those Agreements after engaging Decision One. L.I.F.E. Lasting Income for the Elderly, MFM, Inc., Junior G.E.T. Enrichment Center, and Your House and Home Management, Inc. ¶¶ 51-62.

Veritas purports to be a prepaid legal service provider. It is not licensed as an insurer or insurance broker in Florida "or a number of other states where Decision One has induced merchants to joint its plain, including California and Ohio." ¶ 44.

John Sandoval is the founder and Chief Executive Officer of Decision One. ¶ 21. Angelo Anzalone is the founder and Managing Member of Veritas. ¶ 12. Sara Anzalone is Angelo Anzalone's wife and the Chief Operating Officer of Veritas. ¶ 13. Dwayne Smith and Victor Castaldo are employees of Veritas. ¶¶ 15, 23. Jesse Ross, Mario Chavoyo, and Matthew Frank are client relations employees at Decision One. ¶¶ 16, 18, 19.

**DISCUSSION**

**1. RICO**

*Association-In-Fact Enterprise*

The Complaint alleges, "Decision One and its chief executive, John Sandoval, Veritas and its founder, Angelo Anzalone, form an association-in-fact enterprise (the "Decision One Enterprise") within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c)." ¶ 67, *see also* ¶ 6. The Veritas Defendants argue that the Complaint runs afoul of the Eleventh Circuit panel decision in *United States v. Hartley,* 678 F.2d 961, 989 (11th Cir. 1982), *rev'd on other grounds, United States v. Goldin Industries, Inc.* 219 F.3d 1268, 1271 (11th Cir. 2000)("*Goldin I*"), which held that a RICO association-in-fact enterprise cannot contain both living persons and artificial entities. The Veritas Defendants acknowledge that the subsequent Eleventh Circuit panel decision in *United States v. Navarro-Ordas,* 770 F.2d 959, 969 n. 19 (11th Cir. 1985) held that a RICO association-in-fact enterprise could include corporate entities and living persons. Nevertheless, citing *Lockheed Martin Corp. v. Boeing, Co.,* 357 F. Supp. 2d. 1350, 1364-65 (M.D. Fla. 2005), the Veritas Defendants argue that the Eleventh Circuit's prior panel rule controls, so this Court must follow *Hartley*, not *Navarro-Ordas.*

As Funding Metrics correctly notes, *Hartley* did not involve an association-in-fact enterprise. The relevant issue presented there was "whether a corporation can simultaneously be the defendant and the criminal enterprise under the RICO statute." 678 F.2d at 968. The issue of whether an enterprise can contain both entities and living persons was mentioned only in a footnote discussing whether a corporate subdivision could be a RICO enterprise. *Id.* at 989, n. 46. This discussion in *Hartley* is dicta which has no precedential authority. *See Watts v. BellSouth Telecomms., Inc.,* 316 F.3d 1203, 1207 (11th Cir. 2003) ("[J]udicial decisions cannot make law

beyond the facts of the cases in which those decisions are announced.").  In contrast, the panel in *Navarro-Ordas* squarely rejected appellant's argument that "the indictment failed to describe a RICO 'enterprise' [because] it only alleged that the enterprise consisted of a group of corporate entities rather than living persons, as required by 18 U.S.C. § 1964(1)."  770 F.2d at 969, n. 19. The Court will follow *Navarro-Ordas.*

The Veritas Defendants also argue that the Complaint fails to allege a proper enterprise because the alleged association-in-fact does not "exist separate from the alleged underlying racketeering activity."  DE 31 at 6.  "[A]n association-in-fact enterprise must possess three qualities: 'a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose.'"  *Ray,* 836 F.3d at 1352, *quoting and citing Boyle v. United States,* 556 U.S. 938, 946 (2009).  As the Supreme Court explained, "The enterprise is an entity, for present purposes a group of persons associated together for a common purpose of engaging in a course of conduct.  [The existence of an enterprise is] proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit."  *United States v. Turkette*, 452 U.S. 576, 583 (1981).  Therefore:

> [S]imply conspiring to commit a fraud is not enough to trigger the Act if the parties
> are not organized in a fashion that would enable them to function as racketeering
> organization for other purposes." *VanDenBroeck v. CommonPoint Mortgage
> Co.,* 210 F.3d 696, 699 (6th Cir.2000); *Fitzgerald v. Chrysler Corp.,* 116 F.3d 225,
> 228 (7th Cir.1997). Since "diverse parties ... customarily act for their own gain or
> benefit in commercial relationships," a complaint founded on commercial
> relationships between the alleged components of the enterprise should plead facts

> "dispel[ling] the notion that the different parties entered into [the alleged] agreements ... for their own gain or benefit." *Stachon v. United Consumers Club, Inc.,* 229 F.3d 673, 677 n. 4 (7th Cir.2000).

*In re Managed Care Litig.,* 298 F. Supp. 2d 1259, 1274 (S.D. Fla. 2003)(J. Moreno).

The Complaint sufficiently alleges an association-in-fact enterprise exists. The well-pled allegations of the Complaint describe an ongoing, structured group that was engaged in a continuous course of conduct for a common goal.

*Distinctiveness*

The corporate defendants argue that the Complaint does not make them distinct from the alleged association-in-fact enterprise. The parties agree that the distinctiveness requirement only applies to the corporate defendants, here. *See Cedric Kushner*, 533 U.S. at 164 (distinguishing situation where corporate employee is the defendant and the corporation is the enterprise from situation where corporation is defendant and corporation and its employees are the enterprise.); *Ray,* 836 F.3d at 1357. "The prohibition against the unity of person and enterprise applies only when the singular person or entity is defined as both the person and *the only entity comprising the enterprise*." *Goldin,* 219 F.3d at 1275 (emphasis added). Here, the enterprise comprises two corporations and two individuals acting in their official capacities. Each of the corporations and each of the individuals is a named defendant. There is no allegation that all of the components of the enterprise are connected through an agency relationship. *C.f. Florida Evergreen Foliage v. E.I. Dupont De Nemours & Co.,* 336 F. Supp. 2d. 1239, 1261-62 (S.D. Fla. 2004) (J. Gold) (distinctiveness requirement not met where alleged enterprise consisted of corporation, employees,

outside counsel, and agents and consultants). Therefore, neither Veritas nor Decision One is the sole entity constituting the enterprise, so there is no distinctiveness problem.

*Participation*

The Veritas Defendants assert that the Complaint fails to sufficiently plead that they knowingly participated in the affairs of the enterprise. DE 31 at 8-9. They also assert that the Complaint fails to sufficiently plead that they engaged in any acts of mail or wire fraud. DE 31 at 10-12. The Court agrees. The Complaint lacks sufficient facts to plausibly establish that the Veritas Defendants knew that a fraud was occurring. Without this knowledge, there cannot be the requisite intent to defraud, nor can there be aiding and abetting liability for the fraudulent acts of others.

The totality of the non-conclusory factual allegations against the Veritas Defendants are:

- Veritas is not licensed to sell insurance in Florida "and other relevant jurisdictions," including Ohio and California. ¶¶ 4, 44.

- Veritas continued to sell insurance even after it agreed with the Florida Office of Insurance Regulation not to sell insurance in Florida. ¶¶ 4, 45.

- The first $1500 that Decision One collects from each merchant is paid to Veritas. ¶ 4.

- Defendant Angelo Anzalone previously owned a debt relief company that operated out of the same premises that now houses Veritas. Anzalone's debt relief company was shut down after being investigated by several state attorneys general. ¶¶ 4, 46.

- The debt relief company was fined $30,000 by the West Virginia Attorney General. ¶ 46.

- Veritas will not provide a lawyer until the merchant has actually been sued. ¶ 5.

- One of the law firms that Veritas had been using in New York stopped representing merchants after the firm no longer qualified to represent clients in New York. ¶¶ 5, 45.

- "The Veritas Legal Plan Services Plan is part of the Debt Resolution Agreement with merchants. It lays out the insurance plan, which requires

the merchant's signature. Decision One's logo appears on the first page of the Veritas Legal Plan Service Plan." ¶ 47.[4]

- An unspecified person at Veritas sent Lillian Bruce a "welcome" email on June 2, 2017." ¶ 53.

- Defendant Castaldo emailed Lillian Bruce on January 30, 2018, with contact information for an attorney who would handle her dispute with a different merchant cash advance provider, but no Veritas representative or Veritas attorney contacted Funding Metrics on behalf of Bruce. ¶ 54

- MFM paid Veritas instead of paying Funding Metrics. ¶ 56.

- On November 14, 2017, MFM signed an application to Veritas and transmitted it via email. ¶ 56.

- Janis Bond agreed to pay a $1,500 down payment to Veritas. ¶ 59. There is no factual allegation that Veritas actually received the $1,500, although the Complaint later alleges "Veritas kept the $1,500 it had received." ¶ 60.

- On December 1, 2017, Defendant Smith send a welcome email to Junior G.E.T. Enrichment Center on behalf of Veritas. ¶ 60. Bond, the owner of Junior G.E.T. Enrichment Center, contacted an unspecified person at Veritas, who referred her to Decision One.

Even viewed in the light most favorable to Funding Metrics, these allegations fall short of alleging a plausible claim that Veritas, Angelo Anzalone, Sara Anzalone, Castaldo, or Smith had the requisite intent to join a scheme to defraud. Similarly, they fall short of pleading a plausible claim that the Veritas Defendants were aware of fraudulent actions by the Decision One Defendants that are alleged in the Complaint.

The Decision One Defendants argue that the Complaint should be dismissed because it merely summarily identifies the members of the enterprise and alleges that each "participates in the operation and management of the Decision One Enterprise." DE 33 at 12 (citing ¶¶ 67, 68). The Court disagrees. The Complaint alleges that Sandoval is the Chief Executive Officer of Decision One, which is a component of the association-in-fact enterprise. It also alleges specific acts by Ross, Chavoyo, and Frank that were undertaken to further the objectives of the enterprise. Viewed

---

[4] Neither the Veritas Legal Plan Services Plan nor the Debt Resolution Agreement are in the record before the Court. Likewise, the content of the "welcome" emails is not in the record.

in the light most favorable to Funding Metrics, these allegations are sufficient to create a plausible claim that the Decision One Defendants participated in the management and operation of the alleged enterprise.

*Causation*

The Veritas Defendants assert that the Complaint fails to sufficiently plead that they were the proximate cause of any injury to Plaintiff. DE 31 at 12-13. The Court agrees. Because the Complaint fails to sufficiently allege that the Veritas Defendants participated in the conduct of the enterprise through a pattern of racketeering activity, they cannot have caused damages to Funding Metrics through the enterprise.

The Decision One Defendants also argue that the Complaint fails to allege proximate causation. DE 33 at 12-13. The Court disagrees. Viewed in the light most favorable to Funding Metrics, the Complaint alleges a plausible claim that the merchants breached their Merchant Cash Advance Agreements only after interacting with Decision One and based on communications with Decision One.

*Rule 9(b)*

All Defendants assert that the Complaint does not allege mail and wire fraud with sufficient particularity to meet the requirements of Rule 9(b). The Court agrees. For example, although the Complaint references items being emailed and phone calls being made, it does not specify how they were *interstate* calls, which are a necessary predicate to wire fraud. Additionally, the Complaint references 25 other merchants who defaulted on obligations to Funding Metrics after hiring Decision One, but does not plead any particulars about those merchants, including details of their

communications with defendants, the amounts obtained from the merchants, and the facts establishing predicate mailings or uses of the wires.

*Damages*

The Decision One Defendants assert that the Complaint does not allege ascertainable damages because Funding Metrics may recover its alleged losses from third parties. DE 33 at 15-16. The Court rejects this argument. At this stage of the litigation, the Court must accept the well-pled allegations in the Complaint, which establish a plausible claim that merchants stopped paying Funding Metrics, and diverted funds away from Funding Metrics, as a result of actions by the Decision One Defendants.

## 2. Tortious Interference

The individual Decision One Defendants assert that the Complaint does not articulate a theory by which they can be liable for tortious interference or conspiracy to tortuously interfere with the contracts between Funding Metrics and the merchants. DE 33 at 19-20. It is instructive to look at the well-pled allegations against each individual:

- John Sandoval: Sandoval is the founder and CEO of Decision One. ¶ 21.

- Jesse Ross: Ross is a client relations employee of Decision One. ¶ 19. Ross was contacted by the owner of L.I.F.E. in January 2018 about how to respond to a summons and complaint filed against L.I.F.E. ¶ 54 "Ross promised to send her an email address to which to forward the pleading, but when Ross did not promptly follow up, she contacted Veritas directly." ¶ *Id.* Ross subsequently instructed her to send the complaint to Decision One. *Id.*

- Mario Chavoyo: Chavoyo is a client relations employee at Decision One. ¶ 16. In June 2017, Chavoyo contacted the owner of L.I.F.E. to inform her "that you still have Veritas as a part of your debt relief program. There was a system error and underwriting is fixing this." ¶ 54. In January 2018, Chavoyo emailed the owner of Junior G.E.T. Enrichment Center and told her to ignore payment demands from Funding Metrics. ¶ 59.

- Matthew Frank: Frank is a client relations employee at Decision One. ¶ 18. In November 2017, the owner of Junior G.E.T. Enrichment Center forwarded to Decision One a communication from Funding Metrics about

her debt. ¶ 59. Frank responded that it was "not an official document that holds any merits, as it was not filed and executed through the courts." *Id.*

Even in the light most favorable to Funding Metrics, these allegations fail to state a plausible claim for tortious interference with contract. There is no allegation that Ross, Chavoyo, or Frank knew that they were making a misrepresentation (even if they were). Similarly, there is no allegation that Sandoval had personal knowledge of the activities of the other Decision One employees. For all these reasons, Count Three fails to state a claim against the individual Decision One Defendants. For the same reasons, it fails to allege a plausible claim that the individual Decision One Defendants had sufficient knowledge or intent to enter into a conspiracy to tortuously interfere with Funding Metrics' contracts, so Count Four must be dismissed as to them.

The Decision One Defendants assert that the Complaint fails to properly allege that they caused any breaches of Funding Metrics' contracts with merchants. The Complaint identifies four specific merchants who allegedly were victimized by the Decision One Defendants. It alleges that L.I.F.E. Lasting Income for the Elderly made two months of payments to Funding Metrics before ceasing payments on or about May 17, 2017, after coming in contact with Decision One. ¶¶ 51, 53. MFM, Inc. is alleged to have made two months of payments before ceasing in October 2017 after being contacted by an unspecified representative of Decision One. ¶¶ 55, 56. Junior G.E.T. Enrichment Center allegedly made daily payments for six weeks before terminating them after speaking to Decision One. ¶¶ 58, 59. Your House "was already behind on its payments to Plaintff when [its owner] first spoke to Decision One, but [the owner] always intended to make good on his obligations when he could." ¶ 61. The Complaint does not contain a factual basis for the representation that Your House intended to pay when it could, so this allegation is not entitled to the assumption of truth, nor is there a specific allegation that Your House thereafter had the ability to pay and failed to pay based on advice from the Decision One Defendants. The Complaint also

references 25 other merchants, but does not plead any facts about their payment practices or timing. Viewed in the light most favorable to Funding Metrics, the Complaint alleges that Decision One caused L.I.F.E., MFM, and Junior to breach their contracts.

The Decision One Defendants also assert that the Complaint fails to allege a lack of justification. It appears from the Complaint that Funding Metrics' theory of tortious interference is improper methods. The Complaint contains factual allegations which, in the light most favorable to Funding Metrics, plausibly claim that Decision One (the entity, not the individual employees) used misrepresentations to induce merchants to break their agreements with Funding Metrics. Those allegations are sufficient to plead a lack of justification.

For the reasons stated above, the Complaint fails to sufficiently plead that the Veritas Defendants participated in, or had knowledge of, a fraud, so there is no plausible claim that the Veritas Defendants conspired to act without justification. Moreover, the Complaint fails to adequately allege that the Veritas Defendants knew that Funding Metrics existed or that contracts existed between Funding Metrics and the merchants. Count Four must be dismissed as to the Veritas Defendants.

The Decision One Defendants assert that the conspiracy claim against Sandoval, Ross, Chavoyo, and Frank is barred by the intracorporate conspiracy doctrine. "The intracorporate conspiracy doctrine holds that acts of corporate agents are attributed to the corporation itself, thereby negating the multiplicity of actors necessary for the formation of a conspiracy. Simply put, under the doctrine, a corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves." *McAndrew v. Lockheed Martin Corp.,* 206 F.3d 1031, 1036 (11th Cir. 2000). Funding Metrics responds that the intracorporate conspiracy doctrine does not apply because the Complaint alleges

a conspiracy among the Decision One employees, Veritas, and Veritas' employees. Given the Court's finding that the Complaint does not sufficiently plead that Veritas or its employees were part of the conspiracy, the intracorporate conspiracy doctrine applies and Count Four must be dismissed as to the Decision One Defendants.

### 3. Conversion

Funding Metrics asserts in their Complaint that they held perfected security interests in the merchants' property, including their "inventory, accounts receivable, and the proceeds of such inventory and receivables in their bank account." ¶ 96. Furthermore, Funding Metrics alleges that Decision One debited funds from the Merchants' bank accounts despite superior property rights, and therefore converted those funds. ¶¶ 98–99. In response, Decision One asserts that the conversion claim fails because the Complaint does not allege a specific and identifiable fund of money that was dedicated to paying Funding Metrics.

The Court cannot assess the exact nature of the security interest or the fund of money because the Merchant Cash Advance Agreement was not attached to the Complaint, nor does the record establish the nature of the specific bank accounts from which funds were withdrawn. Therefore, there are insufficient facts to support a plausible inference that the security interest created the kind of property interest that can support a conversion claim or that the funds were held in the kind of bank account that can support such a claim. *See Bel-Bel Intern. Corp,* 162 F.3d at 1108 (security interest in tomato crop sufficient to support conversion claim.).

### 4. Fraudulent Transfer

Veritas asserts that the Complaint does not sufficiently plead that they received any of the funds from Your House. Funding Metrics responds that the Complaint alleges that Decision One received $10,000 from Your House, and that Veritas was contractually entitled to receive the first

$1500 of that money. ¶ ¶ 4, 61 Viewed in the light most favorable to Funding Metrics, these allegations create a plausible claim that Veritas received $1500 that originated from Your House. Nevertheless, the Complaint does not allege that Veritas was a direct transferee of funds from Your House. The Court need not resolve whether this fact is dispositive, because Count VI fails to allege lack of fair consideration.

The Complaint alleges that on November 15, 2017, Ciervo told the owner of Your House that Decision One would save him a lot of money and would go to work for Your House right away. ¶ 61. Your House paid $10,000 to Decision One. There was an exchange of several emails on November 22, 2017. The Complaint alleges that over the following months, "Decision One never accomplished anything for Your House, which went into bankruptcy." Notably, the Complaint does not allege that Decision One *did* nothing; it merely alleges that no results were achieved. Even viewed in the light most favorable to Funding Metrics, the Complaint does not allege a plausible claim that Your House failed to receive fair consideration.

## CONCLUSION

It is therefore ORDERED that (1) Counts One, Two, Four, Five, and Six are dismissed against all defendants, with leave to amend, (2) Count Three is dismissed against Sandoval, Ross, Chavoyo, and Frank, with leave to amend, and (3) any amended complaint shall be filed on or before March 8, 2019.

DONE and ORDERED this 22nd day of February, 2019, at West Palm Beach, Florida.

_____
BRUCE REINHART
UNITED STATES MAGISTRATE JUDGE